United States District Court
Southern District of Texas
**ENTERED**
August 13, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOAN C ELLIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-4370 |
| | § | |
| CARRINGTON MORTGAGE SERVICES, LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendant Carrington Mortgage Services, LLC's ("Carrington") Motion for Summary Judgment (Doc. No. 28-1) and Defendants Ramsey and Lonita Weaver's (the "Weavers") Motion for Summary Judgment (Doc. No. 37). Plaintiff Joan Ellis ("Ellis" or "Plaintiff") filed a combined response to both (Doc. No. 49), to which Carrington replied (Doc. No. 50). Plaintiff also filed motions for summary judgment against Carrington (Doc. No. 41) and against the Weavers (Doc. No. 40). Carrington responded (Doc. No. 44). Plaintiff filed three supplemental responses to its response to Carrington's Motion for Summary Judgment (Doc. Nos. 51, 51 & 53). After careful consideration, the Court **GRANTS** Carrington's Motion for Summary Judgment (Doc. No. 28-1) and **DENIES** Plaintiff's cross-motion. (Doc. No. 41). The remaining motions are hereby **DENIED** as moot (Doc. Nos. 37 & 40).

### I. Background

On September 26, 2002, the Weavers executed a Texas Home Equity Security Instrument ("Security Instrument"), which secured a note in the amount of $74,000 (the "Note") in favor of lender New Century Mortgage Corporation and encumbered residential property located at 14906 Sheffield Terrace, Channelview, Texas 77530 (the "Property"). (Doc. No. 28-1 at 30, 35). The

Security Instrument, or mortgage, was recorded in the real property records of Harris County, Texas on October 19, 2002. (*Id.*). It was eventually assigned to Deutsche Bank National Trust Company ("Deutsche Bank"), for whom Carrington is the servicer. (*Id.* at 27–28). This assignment was also properly recorded. (*Id.* at 56–58).

Plaintiff purchased the Property from the Weavers in 2012 by executing a Contract for Deed. (*Id.* at 161–166). Plaintiff did not order a title report or research the real property records of Harris County prior to the sale. (*Id.* at 74, 52:17–19; 92, 123:14–19). The Contract for Deed stipulated that the "Seller asking price" was $75,000, and that Plaintiff would provide a $6,000 down payment and make monthly payments of $1,100 to the Weavers until 2034. (*Id.* at 167). It also provided the option of prepayment for Plaintiff to pay the balance at any time. (*Id.* at 168). As is typical in many contracts for deed, it also included the following caveat: "Buyer understands and acknowledges that Buyer does not acquire legal title by this contract and Buyer will not acquire legal title until Seller's Deed is Delivered." (*Id.*). A deed was never delivered, nor was the title ever in Plaintiff's name. (*Id.* at 124, 252:23–254:10).

On September 4, 2015 and November 4, 2016, the Weavers provided prepayment figures (referred to by the parties as a "payoff") to Plaintiff, as permitted by the Contract for Deed. (*Id.* at 174–177; *id.* at 87, 104:9–105:5). Plaintiff apparently believed these payoff amounts were unfairly inflated. (Doc. No. 28-1 at 159). Plaintiff stopped making her monthly payments on the Contract for Deed between 2016 and 2017. (Doc. No. 1-6 at 147). Thereafter, Plaintiff and the Weavers agreed to enter a "short sale" conveyance of the Property. (Doc. Nos. 28-1 at 78, 67:14–68:11 & 37-3). Carrington was not involved in the payoff calculations, the decision of Plaintiff to stop making payments, or this "short sale" agreement. (Doc. Nos. 28-1 at 84, 90:1–92:19 & 37-3). The

Weavers and Plaintiff both signed and executed the contract (Doc. No. 37-3), but the parties did not close the deal because Plaintiff never paid for the Property. (Doc. No. 28-1 at 78, 68:8–16).

Meanwhile, the mortgage was in default. On January 19, 2018, Carrington, acting in its capacity as servicer of Deutsche Bank, instituted judicial foreclosure on the Property. (Doc. No. 28-1 at 183). That action resulted in a foreclosure order permitting Carrington to foreclose the Property after January 1, 2019. (*Id.* at 187). Carrington provided timely notice of default and foreclosure to the Weavers and the Property was foreclosed upon on February 5, 2019. (*Id.* at 191). Plaintiff was not part of the foreclosure auction or sale. (*Id.* at 111, 99:15–20).

On November 21, 2016, prior to the attempted short sale, Plaintiff filed her Verified First Amended Petition in state court against the Weavers. She alleged breach of contract, fraud in real estate transaction, specific performance, and sought injunctive relief. (Doc. No. 1-6 at 145). Plaintiff has subsequently filed six supplements to the petition. There was no proof of service for any of the pleadings on Carrington except as to the Sixth Supplement to Ellis' Verified Amended Petition on Carrington, which introduced claims against it.[1] (Doc. No. 20). The Verified First Amended Petition as supplemented is the operative pleading for purposes of this order ("the Complaint"). The Complaint alleges several causes of action against Carrington, including: conversion, intentional infliction of emotional distress, conspiracy to commit fraud, common law fraud, fraud by non-disclosure, fraudulent inducement, deceptive trade practices under the Texas Deceptive Trade Practices Act (DTPA), predatory lending claims under the Truth in Lending Act (TILA), and claims under the Real Estate Settlement Procedures Act (RESPA). Carrington removed the case to this Court. (Doc. No. 1). Carrington and the Weavers filed motions for

---

[1] Carrington was first added as a co-defendant to the action in the fourth of six supplements (incorrectly titled the "Second Supplement") in July 2019. The sixth supplement, properly served on Carrington, includes all the claims alleged against Carrington from both the July 2019 supplement and the fifth supplement.

summary judgment (Doc. Nos. 28-1 & 37) and Plaintiff filed cross-motions for summary judgment against both sets of defendants (Doc. Nos. 40 & 41). Plaintiff also filed a motion seeking leave to amend her "petition," which this Court denied. (Doc. No. 58).

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

A nonmovant's failure to respond to a motion for summary judgment does not entitle the movant to a default judgment; rather, the court may accept the movant's evidence as undisputed and may enter judgment in movant's favor if the summary judgment evidence establishes a prima

facie showing of the movant's entitlement thereto. *Retzlaff v. de la Vina*, 606 F. Supp. 2d 654, 656 (W.D. Tex. 2009) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

### III. Analysis

A. <u>Carrington's Motion for Summary Judgment and Plaintiff's Cross-Motion</u>

*1. Conversion*

The elements of conversion are: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied). Carrington argues that Plaintiff's claim for conversion fails because real property is not subject to a conversion claim under Texas law. (Doc. No. 28-1 at 21). Plaintiff has not responded to this argument.

Plaintiff complains that Carrington "effectively confiscated Ms. Ellis home which she has in good faith purchased from the Weavers." (Doc. No. 1-2 at 57). These allegations indisputably concern real property. Texas does not recognize a cause of action for conversion of real property. *Cage Bros. v. Whiteman*, 163 S.W.2d 638, 641 (1942); *see also Lucio v. John G. & Marie Stella Kenedy Mem'l Found.*, 298 S.W.3d 663, 667 (Tex. App.—Corpus Christi 2009, pet. denied) (observing that Texas law does not recognize cause of action for conversion of real property); *Bacon Tomsons, Ltd. v. Chrisjo Energy, Inc.*, 2016 WL 4217254, at *7 (Tex. App.—Houston [1st Dist.] Aug. 9, 2016, no pet.) (same). Neither Plaintiff's response to the motion (Doc. No. 49) nor Plaintiff's own motion for summary judgment (Doc. No. 41) addresses this argument. The Court

therefore grants Carrington's motion for summary judgment as to the claim for conversion, and, to the extent that Plaintiff moved for summary judgment on this claim, that motion is denied.

### 2. *Intentional Infliction of Emotional Distress*

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). "To be extreme and outrageous, conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex. 1994)). Carrington argues that Plaintiff's claim for emotional distress fails as a matter of law because Plaintiff has not demonstrated any evidence that Carrington's conduct was extreme or outrageous. (Doc. No. 28-1 at 22). Plaintiff has not responded to Carrington's arguments.

According to the Complaint, Carrington's conduct was "extreme, hysterical and outrageous and proximately caused Plaintiff's severe emotional distress." (Doc. No. 1-2 at 58). Without identifying specific conduct, Plaintiff alleges that she deserves compensation for emotional distress "because on numerous occasions Ms. Ellis reached out to Carrington to work with them and/or mediate this matter outside of court, and Carrington should have allowed her to do so, particularly after she sat on the frontline up in Afghanistan and came back with PTSD." (*Id.* at 56). Clearly, an inability to resolve a case outside of court does not "go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." *Bruce*, 998 S.W.2d at 611.

The Court also considers whether Carrington's action of foreclosing was extreme and outrageous. The summary judgment evidence shows that by foreclosing, Carrington was exercising its rights under the Note and Security Instrument. First, Carrington points the Court to the Assignment of Note and Deed to Deutsche Bank, which is serviced by Carrington. (Doc. No. 28-1 at 56). Carrington also cites to the Judicial Foreclosure Order, which entitled Carrington to foreclose the Property after January 1, 2019. (*Id.* at 187). Furthermore, it submits the Substitute Trustee's Deed, providing notice of default and foreclosure to the Weavers. (*Id.* at 191). Under Texas law, conduct associated with asserting a legal right cannot be extreme or outrageous. *Garza v. Deutsche Bank Tr. Co. Americas for Residential Accredit Loans, Inc. 2006-QS9*, 2012 WL 13029409, at *6 (W.D. Tex. Oct. 24, 2012), report and recommendation adopted, 2013 WL 12293489 (W.D. Tex. Jan. 23, 2013); *see also Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 898 (Tex. App.—Beaumont 2002, pet. denied) (as matter of law, lawsuit did not constitute extreme and outrageous conduct sufficient to support cause of action for intentional infliction of emotional distress even though suit had no merit). Accordingly, courts have rejected claims asserting intentional infliction of emotional distress where defendants simply exercised rights owed under mortgage loan documents. *See Wieler United Savings Ass'n of Tex., FSB*, 887 S.W.2d 155, 159 (Tex. App.—Texarkana 1994, writ denied); *Baskett v. Pleasant*, 1996 WL 135680, at *3 (Tex. App.—Dallas Mar. 27, 1996, writ denied); *Naddour v. Nationstar Mortg., LLC*, 2012 WL 4473127, at *7 (N.D. Tex. Sep. 27, 2012).

Plaintiff did not respond in any fashion to Carrington's arguments for summary judgment on this claim. Since Carrington successfully carried its burden on summary judgment, the burden shifted to Plaintiff to provide specific facts that show a genuine dispute of fact. *Celotex*, 477 U.S at 324; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("Rule 56(e) itself

provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Having failed to present the Court with any evidence that Carrington's conduct was extreme or outrageous, she failed to meet that burden. Therefore, the Court grants Carrington's motion for summary judgment as to the claim for intentional infliction of emotional distress, and, to the extent that Plaintiff moved for summary judgment on this claim, that motion is denied. *See Oporto v. City of El Paso Tex.*, 2011 WL 13196177, at *5 (W.D. Tex. Jan. 9, 2011) (collecting cases) (recognizing a plaintiff waives claims she fails to brief in a response to a motion for summary judgment).

### 3. *Common Law Fraud, Fraud by Non-Disclosure, Fraudulent Inducement*

All of Plaintiff's claims against Carrington pertaining to fraud appear to arise from allegations that the Weavers relayed an "inflated" payoff price to Plaintiff to pay their own mortgage and failed to disclose that they had a lien on their house before entering the Contract for Deed. (Doc. No. 1-2 at 58–61). Carrington contends that all of Plaintiff's claims for fraud fail because they have not been pled with particularity and fail to identify any misrepresentations of material fact that she justifiably relied on to her detriment. Moreover, with respect to the claim for fraudulent inducement, Carrington argues that there is no underlying contract between her and Carrington. (Doc. No. 28-1 at 18-20). Plaintiff did not respond to any of Carrington's arguments. In her response and her own motion, she addresses only fraud in a real estate transaction, a cause of action not alleged against Carrington, and the response only concerns the Weavers. (Doc. Nos. 41 at 5 & 49 at 6).

To state a claim for fraud, a plaintiff must show (1) the defendant made a false material representation; (2) knowingly or recklessly; (3) that was intended to induce plaintiff to act upon

the representation; and 4) plaintiff actually and justifiably relied upon the representation and suffered injury. *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). To establish fraud by non-disclosure, a subset of fraud, the plaintiff must show (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

Fraudulent inducement is another subset of fraud, whereby "the elements of fraud must be established as they relate to an agreement between the parties." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (cleaned up). Under Texas law, the elements of fraudulent inducement are "a misrepresentation; that defendant knew the representation was false and intended to induce plaintiff to enter into the contract through that misrepresentation; that plaintiff actually relied on the misrepresentation in entering into the contract; and that plaintiff's reliance led to plaintiff to suffer an injury through entering into the contract." *Id.*

Plaintiff's allegations of fraud are all subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which requires Plaintiff's claims to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016).

The Court finds that Plaintiff has failed to allege a misrepresentation of material fact that was purportedly made by Carrington to her, or when, where, and by whom such representation

was made. The closest pleadings that approach this standard concern the apparently inflated payoff amounts that the Weavers prepared for Plaintiff, and the fact that they allegedly never told Plaintiff there was a lien on the property. Plaintiff alleges that "Carrington's actions demonstrate that they had full knowledge of this fraud and their actions were ratification of the fraud because they saw that the Weaver's illegal agreement was a way to get their lien paid . . . . They did nothing. They said nothing." (Doc. No. 1-2 at 60). These allegations clearly do not meet the heightened pleading standard for fraud. *See Hoffman*, 838 F.3d at 576.

Even if Plaintiff had met the heightened pleading standard, fraud by non-disclosure requires that the defendant have a duty to disclose. *See Bombardier*, 572 S.W.3d at 219–220. Under Texas law, silence or failure to disclose information is not actionable unless there is a duty to speak. *Holland v. Thompson*, 338 S.W.3d 586, 598 (Tex. App.—El Paso 2010, pet. denied). The duty arises in four circumstances: "(1) a fiduciary or other special relationship between the parties gives rise to a duty to disclose; (2) new information makes a defendant's earlier representation misleading or untrue; (3) a defendant conveys a false impression by making a partial disclosure; and (4) a defendant who voluntarily discloses information has a duty to disclose the whole truth." *Id.*; *see also In re Houston Reg'l Sports Network, L.P.*, 547 B.R. 717, 749 (Bankr. S.D. Tex. 2016).

The summary judgment evidence shows that Carrington had no fiduciary or other special relationship with Plaintiff. Plaintiff testified that she made 52 monthly payments on her home to the Weavers, not Carrington. She also testified that she had no communication with Carrington regarding the payments. (*See* Doc. No. 28-1 at 95, 134:7–16; 68, 29:25–30:6). She even testified that she was trying to stop paying the Weavers and "start a contract with the people that actually owned my house." (*Id.* at 74, 50:3–6). There is no evidence, let alone allegation, that she was ever party to a contract with Carrington. Plaintiff also failed to allege or support with evidence any facts

to trigger the other three circumstances that can give rise to a duty to speak. The Court finds that Carrington's silence cannot constitute a fraudulent misrepresentation or fraud by nondisclosure. That same summary judgement evidence also demonstrates that there is no underlying contract between Plaintiff and Carrington. (*See also* Doc. Nos. 37-3 & No. 28-1 at 161). In the absence of evidence of a contract between Carrington and Plaintiff, there could be no fraudulent inducement cause of action. *See Dardenne*, 345 S.W.3d at 126; *Bohnsack*, 668 F.3d at 277.

Plaintiff has not responded to any of Carrington's arguments concerning fraud, fraud by non-disclosure, or fraudulent inducement. As a result, she has not met her burden on summary judgment to show a genuine dispute of material fact. *Celotex*, 477 U.S. at 324. The Court grants Carrington's motion for summary judgment as to all fraud claims, and, to the extent that Plaintiff moved for summary judgment on this claim, that motion is denied.

*4. Conspiracy to Commit Fraud*

To establish a civil conspiracy to commit fraud, the plaintiff must establish: (1) a combination of two or more persons; (2) seeking to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) having a meeting of minds on the object or course of action; (4) who commit one or more unlawful, overt acts; (5) proximately resulting in damages. *See Van Duzer v. U.S. Bank. N.A.*, 995 F. Supp. 2d 673, 697 (S.D. Tex. 2014). Carrington argues that Plaintiff's claim for conspiracy to commit fraud fails because she has not submitted any evidence to establish that the Weavers and Carrington sought to accomplish an unlawful purpose or a lawful purpose by unlawful means. (Doc. No. 28-1 at 24). Plaintiff has not responded to Carrington's arguments.

As previously stated, Plaintiff alleges the Weavers attempted to defraud her by not telling her there was a lien on the Property prior to signing the Contract for Deed and providing an inflated

payoff statement to pay off their mortgage. (Doc. No. 1-2 at 60). She also alleges that Carrington "had full knowledge of this fraud and their actions were ratification of the fraud because they saw that the Weaver's illegal agreement were a way to get their lien paid." (*Id.*). This allegation appears to summarize her conspiracy claim.

The summary judgment record has no evidence that Carrington and the Weavers conspired. Carrington cites to Plaintiff's deposition, during which Plaintiff testified that the difference between the foreclosure sale price of $95,611 and the potential short sale price of $72,000 establishes that Carrington and the Weavers were conspiring. (Doc. No. 28-1 at 104, 172:16–173:16). As Plaintiff admitted, however, she has no evidence to raise a fact issue as to any conspiracy, and the entire claim appears to be built upon an unsupported assumption that Carrington counseled the Weavers to maximize their own profit. She testified:

> If you have a chance to get more money on a property than when you were originally going to get, wouldn't you go for it? And that's what I thought. So that's how I—I came to that conclusion that as *long as [Carrington] advised and they— and I can't prove that they did or they didn't*, but as long as they advised the Weavers . . . not to do anything and let this foreclosure go through and as long as they convinced me to take them off the lawsuit where they can foreclosure on it, they're making money.

(Doc. No. 28-1 at 104, 173:6–16) (emphasis added). In addition to this admission, Plaintiff also testified that the allegedly fraudulent payoff statements appeared to have been prepared only by the Weavers, and she never saw any evidence of a payoff statement prepared by Carrington. (*Id.* at 87, 104:9–14). Plaintiff even testified that Carrington was not a party to the short sale and did not sign any of the short sale contracts. (*Id.* at 84, 90:5–93:22). Accordingly, the Court finds that Carrington has carried its burden on summary judgment.

Plaintiff did not respond to Carrington's arguments in her response or in her own motion. and as such, has presented no evidence to indicate a genuine dispute of material fact. *Celotex*, 477

U.S. at 324. The Court grants Carrington's motion for summary judgment as to the claim for conspiracy to commit fraud, and, to the extent that Plaintiff moved for summary judgment on this claim, that motion is denied.

### 5. DTPA

To establish a DTPA claim, the plaintiff must show that: "(1) she is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 Fed. Appx. 833, 837 (5th Cir. 2016) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995)). The DTPA defines "consumer" as "an individual, partnership, [or] corporation . . . who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Comm. Code § 17.45(4). Generally, a loan transaction lies outside the DTPA because money is considered to be neither a good nor a service. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013). Nevertheless, "a mortgagor qualifies as a consumer under the DTPA if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint." *Id.* Carrington argues Plaintiff's DTPA claim fails as a matter of law because plaintiff is not a consumer under the statute. Plaintiff's response quotes various provisions of the Texas Property Code but does not respond to this argument. (Doc. No. 49 at 10).

Carrington has demonstrated that Plaintiff was not a party to the mortgage between the Weavers and Carrington: She entered a separate and unrelated Contract for Deed with the Weavers, who are a party to the mortgage. (Doc. No. 28-1 at 161). She is therefore unable to qualify as a "mortgagor [whose] primary objective in obtaining the loan was to acquire a good." *Miller*, 726 F.3d at 725. Plaintiff did not meaningfully respond to Carrington's argument, citing only various provisions of the Texas Property Code verbatim, and has not raised a dispute about a material fact.

*Celotex*, 477 U.S. at 324. The Court grants Carrington's motion for summary judgment as to the DTPA claim, and, to the extent that Plaintiff moved for summary judgment on this claim, that motion is denied.

*6. RESPA*

RESPA protects real estate consumers during the settlement process. *See Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 358 (5th Cir. 2003). Plaintiff's RESPA claim appears to be based upon the unsubstantiated allegations that Carrington aided the Weavers in their alleged wrongs against Plaintiff. (Doc. No. 1-2 at 50–56). Carrington argues that the RESPA claim fails because she did not identify which section of RESPA Carrington allegedly violated, and because she does not qualify for protection under the act. (Doc. No. 28-1 at 16). Plaintiff did not respond to this argument.

Plaintiff has failed to state a claim under RESPA. She failed to identify the RESPA provisions violated, the procedures not followed, or the precise manner in which Carrington allegedly violated the Act. *See Wilson v. Wells Fargo Bank, Nat. Ass'n*, 2014 WL 815352, at *10 (N.D. Tex. Mar. 3, 2014); *Green v. Carrington Mortgage Services, L.L.C.*, 2014 WL 12874056, at *3 (W.D. Tex. Dec. 15, 2014), report and recommendation adopted, 1:14-CV-999-LY, 2014 WL 12874066 (W.D. Tex. Dec. 31, 2014).

Moreover, Plaintiff does not qualify for protection under RESPA because she was not a signatory of the Note or the Assignment. (Doc. No. 28-1 at 30, 35, 56, 58). RESPA protections apply only to borrowers or loan applicants. While RESPA does not define the term "borrower," courts have held that the term applies only to a borrower on the loan—that is a person who signed the promissory note or assumed the loan. *Lackie v. PHH Mortgage Corp.*, 2018 WL 4409799, at *2 (N.D. Tex. Sept. 17, 2018) (collecting cases). Plaintiff was never a party to the loan and has not

co-signed any documents with Carrington or Deutsche Bank. Thus, even if she had alleged a particular section of RESPA, she has not presented any summary judgment evidence to create a genuine issue of disputed fact about whether she falls within the protections of RESPA. The Court grants Carrington's motion for summary judgment as to the RESPA claim, and, to the extent that Plaintiff moved for summary judgment on this claim, that motion is denied.

### 7. TILA

Carrington also moves for summary judgment on Plaintiff's predatory lending claim under TILA on the basis that she is not a consumer for purposes of the Act. (Doc. No. 28-1 at 18). TILA "promotes the informed use of consumer credit by requiring disclosures about its terms and cost." 12 C.F.R. § 226.1. A person is a "consumer" under TILA if the "party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal family or household procedures." *See* 15 U.S.C. § 1602(h). Carrington has presented summary judgment evidence that establishes Carrington (and Deutsche Bank) never extended credit to Plaintiff. She is not on any of the loan documents and has testified that she did not have an agreement with Carrington. (Doc. No. 28-1 at 27, 28, 30, 35; *see also id.* at 89, 112:22–113:24). The summary judgment evidence demonstrates that Carrington is in privity only with the Weavers. Under these circumstances, Plaintiff does not qualify as a consumer under TILA, and any such claims are dismissed. *See Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 184 (S.D. Tex. 2007). Since Plaintiff failed to respond to this argument in any fashion, the Court grants summary judgment in Carrington's favor as to the TILA claims, and, to the extent Plaintiff moved for summary judgment on this claim, that motion is denied. *Celotex*, 477 U.S. at 324.

*8. Remainder of Plaintiff's Cross-Motion*

The remaining portions of Plaintiff's cross-motion move for summary judgment on claims that were not alleged against Carrington.[2] Plaintiff contends she is entitled to summary judgment on claims for interference with contract and/or anticipatory breach of contract and conversion; conspiracy to commit fraud in real estate transaction and/or ratification; trespass to try title and/or suit to quiet title. (*See* Doc. No. 41) Insofar as those arguments are responses to Carrington's motion, they have been considered and rejected. To the degree that Plaintiff has moved for summary judgment on those claims against Carrington, that motion is denied.

2.  The Weavers' Motion for Summary Judgment and Plaintiff's Cross-Motion

Having dismissed the claims against Carrington, the only claims remaining in this case are state law claims against the Weavers. As alleged, these claims appear to include breach of contract, fraud in a real estate transaction, specific performance, refund of all payments under the Texas Property Code, fraud, fraudulent inducement, and violations of the Texas Deceptive Trade Practices Act. (Doc. Nos. 1-6 at 145–153; 1-3 at 51–55). When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims. *See* 28 U.S.C. § 1367(c); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173; *St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009). The Court finds that the factors of judicial economy, convenience, fairness, and comity suggest that this Court should decline to exercise jurisdiction over the remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

---

[2] Some of those claims were alleged as against the Weavers, and those are discussed in the following section.

## IV. Conclusion

The Court hereby **GRANTS** Defendant Carrington's Motion for Summary Judgment (Doc. No. 28-1) and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. No. 41). Plaintiff's claims against the Weavers, being grounded in Texas law and solely involving Texas residents, are remanded to the 189th Judicial District Court of Harris County, Texas. That being the case, the Weavers' Motion for Summary Judgment and the Plaintiff's cross-motion are denied without prejudice as **MOOT**. (Doc. Nos. 37 & 40).

Signed at Houston, Texas, this 13th day of August 2021.

Andrew S. Hanen
United States District Judge